UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 3132 |
| | ) | |
| HOUSING AUTHORITY OF JOLIET, | ) | |
| MICHAEL SIMELTON, individually and | ) | |
| as Chief Executive Officer of the Housing | ) | |
| Authority of Joliet, and HENRY MORRIS, | ) | |
| individually and as a former Chief | ) | |
| Executive Officer of the Housing Authority | ) | |
| of Joliet, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the separate motions of Defendants

Housing Authority of Joliet (the "Housing Authority"), Michael Simelton

("Simelton"), individually and as Chief Executive Office of the Housing Authority,

and Henry Morris ("Morris"), individually and as the former Chief Executive Officer

of the Housing Authority (collectively "Defendants") to dismiss Counts I, III, and IV

and strike time-barred allegations in the amended complaint brought by Plaintiff

Janice Holmes ("Holmes") pursuant to Federal Rule of Civil Procedure 12(b)(6).  For

the reasons set forth below, the Court strikes the time-barred allegations, dismisses

Count I with leave to refile, and dismisses Count III and IV.  Count II stands.  Holmes

has thirty days from the entry of this opinion to amend her complaint consistent with the Court's ruling.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Holmes's amended complaint are accepted as true. The Court draws all reasonable inferences in favor of Holmes. The Housing Authority serves people with "low to moderate" income levels. It is an agency under the United States Department of Housing and Urban Development. Simelton is the current Executive Director of the Housing Authority. Morris is the former Executive Director of the Housing Authority.

On August 14, 2002, Holmes began working for the Housing Authority as an assistant in the Human Resources Department. At that time, Holmes was 61 years old. Holmes alleges that her supervisor at the time, Deborah Truss ("Truss"), was "not happy" that she was hired, and Truss was determined to find Holmes unqualified. Truss constantly criticized Holmes for her work, made false accusations against her, and interrupted her when Holmes tried to speak or ask questions.

Shortly after she began working at the Housing Authority, Holmes claims that Morris began to call her in his office because he noticed the difficulty she was having with Truss and wanted to address any issues. At first, Holmes and Morris had a friendly, professional relationship. However, soon after, Morris began turning their

relationship from professional to personal.  He would often ask her questions about her personal life and tell Holmes, "you look pretty" or "you dress very well."  Holmes was constantly in fear that she would lose her position with the Housing Authority, but Morris would tell Holmes that since he was her friend, that he would not let anyone bother her.

In November 2002, Truss left the Housing Authority.  Shortly thereafter, in January 2003, Jody McNeeley ("McNeely") became Holmes's supervisor.  Similar to Truss, Holmes and McNeely also had a truculent relationship.  Around this time, Morris began to call Holmes into his office on a daily basis.  When McNeely gave Holmes an unfavorable evaluation, Morris reassured Holmes, stating "you don't need to worry about that baby" and "I'm not going to let anything happen to you." Morris continued with these comments, telling Holmes that he would be very pleased to "have [her] on his arm" and that "any man would be happy to have [her]."  Holmes claims that Morris would also discuss other employees' personal lives and Holmes observed other female employees spending long periods of time in Morris's office on numerous occasions.

Throughout her amended complaint, Holmes overtly describes inappropriate incidents she experienced that involve Morris.  For example, in November 2005, Morris told Holmes and a co-worker to come to his house during their lunch break.  At his house, Morris allegedly performed sexual acts on the co-worker while making

Holmes watch.  Although she does not give specific dates, sometime after the incident with the co-worker, Holmes also engaged in unsolicited and nonconsensual sexual relations with Morris in his office at the Housing Authority on at least two occasions. Morris told Holmes that it was to be done "as a term of employment".  Holmes states, "[i]t has been seven (7) years, but I still have the memories fresh in my mind. . ." Thus, the Court deduces that these incidents in Morris's office occurred in approximately 2007.

For some unknown reason, from around 2007 to September 2011, Holmes does not allege any lawful activity.  Then beginning in September 2011, Holmes alleges that Morris began to engage in unlawful conduct again.  At this time, Holmes claims that Morris started to make comments about her appearance like he used to, telling her "[y]ou look good baby."  Holmes notes that Morris had not spoken to her in such familiar terms in a long time.  Morris would also tell Holmes that he missed their friendship.

On October 6, 2011, Holmes asked her supervisor for an advanced paycheck due to a family emergency, but that supervisor went to Morris, who stated that it could not be done through the payroll.  Instead, Morris said he would loan Holmes the money.  Holmes did not feel comfortable borrowing money from Morris, but Morris came to her desk with the $600.00 she needed.  Holmes insisted on drafting a promissory note, which she and Holmes both signed.  Holmes also arranged with

another employee at the Housing Authority to have her give Morris the periodic loan repayments so Holmes would not have to communicate with Morris.

In her amended complaint, Holmes alleges that Morris continued to sexually harass her from October 6, 2011 to April 13, 2012.  Holmes provides specific comments Morris made to her while she worked at the Housing Authority.  On April 13, 2012, Holmes filed a complaint for sexual harassment against Morris with the Housing Authority's Human Resources Department.  Morris learned of the meeting and stormed into the room, demanding to know what was going on.  On April 21, 2012, Holmes filed a charge of discrimination (the "First Charge") against the Housing Authority for sex discrimination with the United States Equal Employment Opportunity Commission ("EEOC").  In the First Charge, Holmes claimed that while working at the Housing Authority, she had been exposed to sexual harassment and a hostile environment, and that she had complained about Morris's conduct to her supervisors.  On April 24, 2012, Morris was placed on administrative leave.  It is unknown when Simelton began as the Executive Director of the Housing Authority.

On January 11, 2013, Holmes was discharged from her position at the Housing Authority.  On February 11, 2013, Holmes amended her charge of discrimination (the "Second Charge") against the Housing Authority.  In the Second Charge, Holmes argued that she had been discriminated against because of her sex and in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Particularly, Holmes claimed that she

was exposed to sexual harassment and a hostile work environment and that she

complained about Morris's conduct to her supervisors. Holmes then reported that she

was then subject to different terms and conditions of employment. Attached to

Holmes's joint response, but not included in her amended complaint, is a

memorandum from a December 2, 2013 Pre-Determination Interview ("PDI") the

EEOC conducted. The memorandum states:

> "[e]xplained to Holmes that R was sticking with its original settlement offer of
> $5,000. Holmes stated that she was not interested in taking this offer. I stated
> that I would then close the investigation and issue the NRTS so that Holmes
> could proceed into court. Holmes stated that she would like a few days to think
> about whether she would accept a settlement of $5,000. We agreed that if I did
> not hear from her by 5pm on Wednesday, December 4, that I would proceed
> with the closure of the case file."

On January 30, 2014, the EEOC closed its file on the Second Charge and found that

based on its investigation, it was unable to conclude that the information obtained

established violations of the statutes.

On April 30, 2014, Holmes filed her initial complaint in this Court. On July

17, 2014, Holmes filed an amended complaint against Defendants, alleging: (i) sexual

harassment and hostile work environment in violation of Title VII against the Housing

Authority (Count I); (ii) retaliation against the Housing Authority (Count II);

deprivation of her rights under 42 U.S.C. § 1981(a) ("Section 1981") against Morris

and Simelton (Count III); and deprivation of her Fourteenth Amendment rights under

42 U.S.C. § 1983 ("Section 1983") against Morris and Simelton (Count IV).

On August 15, 2014, the Housing Authority and Simelton filed separate

motions to dismiss Counts I, III and IV and strike time-barred allegations in the

amended complaint. On September 11, 2014, Morris filed his motion to dismiss

Counts III and IV and strike time-barred allegations in the amended complaint. On

September 25, 2014, Holmes submitted a joint response to the motions to dismiss. On

October 9, 2014, the Housing Authority, Simelton, and Morris provided individual

replies in support of their motions to dismiss.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint

and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d

873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must

provide enough factual support to raise her right to relief above a speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially

plausible, meaning that the pleadings must allow the court to draw the reasonable

inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give

the defendant fair notice of what the claim is and the grounds upon which it rests."

*EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting

*Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements," are insufficient to withstand a motion to

dismiss under Rule 12(b)(6). *Id.* at 678. *Pro se* complaints should be construed

liberally and held to a less stringent standard than those drafted by attorneys. *Luevano*

*v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013).

## DISCUSSION

### I. Time-Barred Allegations (Paragraphs 12 through 35)

Defendants insist that paragraphs 12 through 35 (the "paragraphs at issue") in

Holmes's amended complaint are time-barred and ask this Court to strike them and all

of the instances Holmes repeats those allegations within Counts I, III and IV.

Referencing the Background section, *supra*, the paragraphs at issue consist of

Holmes's allegations from 2002 through approximately 2007. Holmes responds that

paragraphs 12 through 35 are "directly linked with and connected" to the timely

allegations. In fact, Holmes argues that her time-barred allegations are the same

allegations presented to the EEOC in her charge against the Housing Authority. She

further asserts that the Court should not exclude the allegations because the "EEOC

correctly found it fitting to not exclude" the time-barred allegations during its

investigation and Holmes attaches the PDI memorandum about her prior settlement negotiations in support.

Defendants provide almost identical reasoning in their individual pleadings as to the time-barred allegations and therefore, the Court summarizes Defendants' overall arguments. First, Defendants argue that the allegations from 2002 through 2007 are time-barred. With respect to Holmes attaching the PDI memorandum to her response to the motion to dismiss, Defendants claim that not only is it improper for Holmes to cite to facts about the PDI that appear nowhere in her amended complaint, but there is also no factual or legal basis for her statement that the EEOC did not exclude the allegations. Because the EEOC, as an administrative agency, investigated the facts on its own, Defendants claim that there is no legal basis for the Court to be restricted to the EEOC's determination.

To bring an action in federal court for sexual harassment under Title VII, a plaintiff must have filed her EEOC charge within 300 days of the occurrence of the allegedly illegal conduct. *Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Congress has determined that time limitations periods commence with the date of the "alleged unlawful employment practice." *Delaware State Coll. v. Ricks*, 449 U.S. 250, 256 (1980) (quoting 42 U.S.C. § 2000e-5(e)). The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences became the most

painful. *Id*. at 258. "Where a pattern of harassment spreads out over years, and it is

evident long before the plaintiff sues that she was victim of actionable harassment, she

'cannot reach back and base her suit on conduct that occurred outside the statute of

limitations.'" *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).

The scope of a judicial proceeding subsequent to an EEOC charge "is limited

by the nature of the charges filed with the EEOC." *Rush v. McDonald's Corp.*, 966

F.2d 1104, 1110 (7th Cir. 1992). "To determine whether the allegations fall within

the scope of the earlier EEOC charge," a court must decide whether "the allegations

are like or reasonably related to those contained in the [EEOC] charge." *Kerstig v.

Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). The rule is designed at

once to give notice to the employer of the nature of the claims against it and to

provide an opportunity for the EEOC and the employer to settle the dispute. *Geldon

v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005). Claims are reasonably

related—and hence properly raised in a subsequent lawsuit—"if there is a factual

relationship between them." *Kerstig*, 250 F.3d at 1118. The pertinent inquiry is "what

EEOC investigation could reasonably be expected to grow from the original

complaint?" *Ajayi v. Aramark Bus. Svcs., Inc.*, 336 F.3d 520, 527-28 (7th Cir. 2003)

(noting that "we do not rest our decision here on an omitted checkmark").

The continuing violation theory is an exception to the 300-day rule where time-

barred acts may be linked to acts within the limitations period under certain

circumstances.  *Presto v. Illinois Dep't of Human Servs.*, No. 00 C 7429, 2002 WL

370212, at *4 (N.D. Ill. Mar. 8, 2002).  "Acts that fall outside of the statute of

limitations may be joined to an act within the statute only if a reasonable person in the

position of the plaintiff would not have known, at the time the untimely acts occurred,

that she had a claim; rather she could only tell by hindsight that the untimely acts

represented the early stages of harassment."  *Garrison v. Burke*, 165 F.3d 565, 569-70

(7th Cir. 1999); *see also Lucas v. Chicago Transit Authority*, 367 F.3d 714, 727 (7th

Cir. 2004) (a continuing violation was not inferred where a three-year gap existed

between alleged discriminatory acts).  "To succeed under a continuing violation

theory, [the plaintiff] must demonstrate that the acts of alleged discrimination are part

of an ongoing pattern of discrimination and that at least one of the alleged discrete

acts of discrimination occurred within the relevant limitations period."  *Hamilton v.

Dresser Industries Inc.*, 964 F.2d 600, 604 (7th Cir. 1992) (citing *Stewart v. CPC

Intern., Inc.*, 679 F.2d 117, 121 (7th Cir. 1982) ("At least one discriminatory act must

have occurred within the charge-filing period")).

    Since the paragraphs at issue all occurred from 2002 through 2007, Defendants

argue that they are time-barred as they occurred far earlier than 300 days before the

First Charge with the EEOC on April 12, 2012.  Defendants find that the lengthy gap

in between the earliest and the latest allegations demonstrates that Holmes's

allegations do not constitute a continued violation as defined by the Seventh Circuit,

despite Holmes's conclusion that it was an "ongoing pattern" when Morris "temporarily directed his overtures towards other females."

Whether the continuing violation exception applies depends on whether a reasonable person in the position of Holmes would have known, at the time the untimely acts occurred, that she had a claim. Holmes describes in her amended complaint that she felt that her position with the Housing Authority was in jeopardy unless she appeased Morris. However, Morris's comments, behavior, and the specific incidents that occurred at Morris's house and office are so obviously a violation, that a reasonable person in Holmes's position would have known that she had a claim. Thus, this Court finds that the continuing violation exception does not apply to the instant matter. The only allegations in Holmes's amended complaint that this Court will consider as timely are incidents that occurred from September 2011 onward, when Morris allegedly started making comments to Holmes again.

Normally, without Holmes's inclusion of the memorandum about the PDI, the Court would stop here. However, since Holmes is a *pro se* litigant, for the sake of argument, we will take the attached memorandum to her response to the motion to dismiss and analyze it as if it was attached to her amended complaint. The issue become whether the memorandum about the PDI tolls Holmes's time-barred allegations in any way. After review, the fact that Holmes supplied information similar to the paragraphs at issue when she spoke with the EEOC has no bearing on

12

her untimely allegations. These settlement discussions on December 2, 2013 happened as a result of Holmes's First Charge with the EEOC in April of 2012. There is no exception that would save Holmes's untimely allegations that occurred 300 days prior to Holmes's EEOC charge from April 21, 2012. The paragraphs at issue and all references to them throughout the amended complaint are therefore, stricken.

**II. Count I**

The Housing Authority moves to dismiss Count I as time-barred. As discussed in Part I, *supra*, the Court will only consider allegations that occurred 300 days prior to Holmes's EEOC charge from April 21, 2012. In Count I, Holmes supplies allegations supporting her claims that the sexual harassment and hostile work environment began again in September 2011 and continued until Morris was discharged in April of 2012. These allegations could potentially survive dismissal, but because Holmes condenses all incidents from 2002 through 2012 in Count I, and we are striking any allegations pertaining to incidents that occurred from 2002 to 2007, Count I now becomes quite muddled. Defendants deserve to be provided with fair notice of a facially plausible federal cause of action, and for this reason, the Court gives Holmes leave to refile Count I consistent with the findings of this opinion. Count I is hereby dismissed without prejudice.

**III. Count II**

Count II of Holmes's amended complaint alleges retaliation under Title VII against the Housing Authority. Under Title VII, unlawful retaliation occurs when an

employer takes actions that "discriminate against" an employee because she has opposed a practice that Title VII forbids. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67 (2006). Holmes alleges that the Housing Authority "acted in accordance with and was motivated by retaliation towards Holmes out of personal animosity and resentment toward her having had previously filed an EEOC Charge of Discrimination claim against defendant Henry Morris. . ." Defendants do not address Count II in their respective motions to dismiss. Construing Holmes's allegations in the light most favorable to her, this Court holds that Holmes has stated a colorable retaliation claim under Title VII, and whether the Housing Authority retaliated against her is a question of fact. Count II survives.

## IV. Count III

In Count III, Holmes alleges that Morris and Simelton violated Section 1981 by discriminating against her based on her race in violation of provisions in the Housing Authority's personnel policy manual. Holmes states that Morris and Simelton intentionally deprived her of equal rights which "raises a plausible inference" that they violated Section 1981 and that they "intentionally discriminated" against her because of her race.

Under Section 1981, an individual defendant can be liable "only if the supervisor causes or participates in a constitutional deprivation." *Smith v. Bray*, 681 F.3d 888, 889 (7th Cir. 2012). "Personal involvement exists where the misconduct

'occurs at [his] direction or with [his] knowledge and consent. That is, he must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye.'" *Harris v. Illinois*, No. 09 C 3071, 2014 WL 2766737, at *16 (N.D. Ill. June 18, 2014). Holmes must also allege that Morris and Simelton acted "either intentionally or with deliberate indifference" in an effort to "single[] out a particular group for disparate treatment[.]" *Nabozny v. Polesny*, 92 F.3d 446, 454 (7th Cir. 1996).

After parsing through the allegations lodged in Holmes's amended complaint, the Court cannot find any facts about Morris or Simelton engaging in racially discriminatory conduct when Holmes worked at the Housing Authority. Even if her race discrimination allegations are based on disparate treatment, Holmes does not make a single allegation that Morris or Simelton singled her or other African American employees out. Besides brief conclusory statements that they violated her rights, Holmes fails to show what Morris and Simelton did or said to her when they allegedly discriminated against her. In addition to not pleading enough facts for the Court to consider, Holmes also does not attach the policy manual to the amended complaint that she relies upon in Count III to help the Court in its assessment. Therefore, these conclusory pleadings are insufficient to establish that there is a plausibility of success on her Section 1981 race-based claims. Thus, this Court dismisses Count III as to both Morris and Simelton.

**IV. Count IV**

Holmes avers that Morris and Simelton deprived her of her rights under Section 1983. Section 1983 is not an independent source of tort liability, it creates a cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and law of the United States." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (internal citation omitted). As explained in *Ledford*, since Section 1983 cannot stand alone, it needs to be paired with a constitutional violation.

In her response to the instant motion, Holmes claims that:

> "[i]t was an inadvertent typographical error that cause the Title VII claim to be cited as one of the federal rights alleged to have been violated by defendants Morris and Simelton, and plaintiff Holmes concedes in agreement to have the Title VII claim directed toward defendant Morris and Simelton stricken from among the cited violated federal rights claim set forth in the Count IV Section 1983—Fourteenth Amendment claim.

With Holmes's striking her allegations under Title VII, it is now unclear which constitutional provision or federal law Holmes claims Morris and Simelton violated to support her Section 1983 claim. However, Holmes's bigger issue is the statute of limitations for her Section 1983 claims. Relying on state law where the violation occurred, the statute of limitations in Illinois for a personal injury tort is two years. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006) (citing 725 ILCS 5/13-202). Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Id*.

16

Holmes filed her initial complaint on April 30, 2014. According to her amended complaint, and construing her allegations liberally, this Court finds that Holmes knew or should have known that her constitutional rights had been violated on or before April 13, 2012—when she filed a complaint of sexual harassment against Morris with the Housing Authority's Human Resources Department or on April 21, 2012—when she filed the First Charge with the EEOC. *See Johnson v. Rwy. Express Agency, Inc.*, 421 U.S. 454, 465-66 (1975) (complaints with the EEOC on a Title VII claim do not toll the statute of limitations on Section 1983 claims).

As to whether any tolling provision applies, Holmes does not argue in her response that any equitable tolling statute would save her from the two-year statute of limitations, and this Court has already found that the continuing violation doctrine is inapplicable in Holmes's case. Consequently, the two year statute of limitations applies. Unfortunately for Holmes, her allegations under Count IV fall just short of complying with the firm rules in place for when to file a Section 1983 action. The Court therefore dismisses Count IV as to Morris and Simelton.

## CONCLUSION

For the foregoing reasons, the Court strikes the time-barred allegations, dismisses Count I with leave to refile, and dismisses Count III and IV. Count II stands. Holmes has thirty days from the entry of this opinion to amend her complaint consistent with the Court's ruling.

_Charles P. Kocoras_

Charles P. Kocoras
United States District Judge

Dated: 11/20/2014