UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE HOLMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14 C 3132 |
| | ) | |
| HOUSING AUTHORITY OF JOLIET, | ) | |
| MICHAEL SIMELTON, individually and | ) | |
| as Chief Executive Officer of the Housing | ) | |
| Authority of Joliet, and HENRY MORRIS, | ) | |
| individually and as a former Chief | ) | |
| Executive Officer of the Housing Authority | ) | |
| of Joliet, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the separate motions of Defendants

Joliet Housing Authority (the "Housing Authority"), Michael Simelton ("Simelton")

and Henry Morris ("Morris") (collectively the "Defendants") to dismiss and strike the

time-barred allegations in Plaintiff Janice Holmes' ("Holmes") second amended

complaint ("SAC") brought pursuant to Federal Rules of Civil Procedure ("Rule")

12(b)(6) and 12(f). For the reasons set forth below, the Court strikes the time-barred

allegations and dismisses Count I and Count III. The Housing Authority's motion to

dismiss Count II is denied.

# BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Holmes' SAC are accepted as true. The Court draws all reasonable inferences in favor of Holmes. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 554-55 (7th Cir. 2012).

Holmes, an African American female, began working at the Housing Authority in 2002. The Housing Authority assists people with "low to moderate" income levels in obtaining public housing. Simelton is the current Chief Executive Officer of the Housing Authority. Morris was the former Chief Executive Officer of the Housing Authority.

In October 2011, Holmes alleges that Morris began to sexually harass her while he served as the Chief Executive Director of the Housing Authority. On October 6, 2011, Holmes asked her direct supervisor, Maria, for an advanced paycheck due to a family emergency, but that supervisor went to Morris, who stated that it could not be done through the payroll. Instead, Morris said he would loan Holmes the money. Holmes did not feel comfortable borrowing money from Morris, but Morris came to her desk with the $600.00 she needed. Holmes insisted on drafting a promissory note, which she and Holmes both signed.

On October 17, 2011, after Morris provided Holmes the loan, Morris came to Holmes' desk and told her "you are so beautiful." Nine days later, Morris told Holmes that she "should be in Hollywood, you should not be in this place." Morris' banter continued throughout the remainder of 2011 and into 2012, where he called her "baby" on numerous occasions and often spoke about maintaining their friendship.

On April 13, 2012, Holmes filed a sexual harassment complaint against Morris with the Housing Authority's Human Resources Department. Morris learned of the meeting in which Holmes was presenting her story and Morris stormed into the room, demanding to know what was going on. On April 21, 2012, Holmes filed a charge of discrimination (the "First Charge") against the Housing Authority for sex discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). In the First Charge, Holmes claimed that while working at the Housing Authority, she had been exposed to sexual harassment and a hostile environment, and that she had complained about Morris' conduct to her supervisors. On April 24, 2012, Morris was placed on administrative leave. It is unknown when Simelton began as the Chief Executive Director of the Housing Authority.

On January 11, 2013, Holmes was discharged from her position at the Housing Authority. On February 11, 2013, Holmes amended her charge of discrimination (the "Second Charge") against the Housing Authority. In the Second Charge, Holmes argued that she had been discriminated against because of her sex and in retaliation

for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Particularly, Holmes claimed that she was exposed to sexual harassment and a hostile work environment and that she complained about Morris' conduct to her supervisors. On January 30, 2014, the EEOC closed its file on the Second Charge and found that based on its investigation, it was unable to conclude that the information obtained established violations of the statutes.

On April 30, 2014, Holmes filed her initial complaint in the case at bar. On July 17, 2014, Holmes filed an amended complaint against the Defendants, alleging: (i) sexual harassment and hostile work environment in violation of Title VII against the Housing Authority (Count I); (ii) retaliation against the Housing Authority (Count II); deprivation of her rights under 42 U.S.C. § 1981(a) ("§ 1981") against Morris and Simelton (Count III); and deprivation of her Fourteenth Amendment rights under 42 U.S.C. §1983 against Morris and Simelton (Count IV). The Defendants moved to dismiss Holmes' amended complaint and strike allegations which were time-barred. On November 20, 2014, this Court granted the Defendants' motion to dismiss Counts I, III, and IV. *Holmes v. Housing Auth. of Joliet, et al.*, 14 C 3132, 2014 WL 6564949 (N.D. Ill. Nov. 20, 2014). We also concluded that Holmes' allegations of misconduct, which spanned from 2002 through 2007, were time-barred. *Id.* at *5. Accordingly, we explicitly held that the paragraphs and all references to the time-barred conduct be stricken. *Id.* On December 22, 2014, Holmes filed her SAC alleging: (i) sexual

4

harassment and hostile work environment in violation of Title VII against the Housing

Authority (Count I); (ii) retaliation against the Housing Authority (Count II); and a

deprivation of her rights under 42 U.S.C. § 1981(a) ("§ 1981") against Morris and

Simelton (Count III).  On January 8, 2015, the Housing Authority moved to dismiss

Count I and Count II of Holmes' SAC and strike any time barred allegations.  The

same day, Simelton moved to dismiss Count III and strike Holmes' reference to the

previously stricken time-barred allegations contained in her SAC.  On January 9,

2015, Morris joined Simelton in submitting his motion to dismiss Count III and

motion to strike.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint

and not the merits of the case.  *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d

873, 878 (7th Cir. 2012).  The allegations in a complaint must set forth a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a)(2).  A plaintiff need not provide detailed factual allegations but must

provide enough factual support to raise her right to relief above a speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim must be facially

plausible, meaning that the pleadings must allow the court to draw the reasonable

inference that the defendant is liable for the purported misconduct.  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  The claims must be described "in sufficient detail to give

the defendant fair notice of what the claim is and the grounds upon which it rests."

*EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Id.* at 678. *Pro se* complaints should be construed liberally and held to a less stringent standard than those drafted by attorneys. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013).

## DISCUSSION

### I. Motion to Strike

The Housing Authority, Morris and Simelton have submitted separate briefs requesting that the Court strike numerous paragraphs in Holmes' SAC, which impermissibly include references to the previously stricken time-barred events. The arguments submitted by the Housing Authority, Morris and Simelton are essentially the same, therefore the Court will resolve their motions jointly. Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," on its own motion or by motion of a party. In order for the court to grant the motion, the defendant must demonstrate that "the allegations being challenged are so unrelated to plaintiff's claim as to be void of merit and unworthy of any consideration" and that the allegations are unduly prejudicial. *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 94 C 4692, 1996 WL 68009, at *1 (N.D. Ill. Feb. 14, 1996). Prejudice results where the challenged allegation has

the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party. *VPHI Inc. v. National Educ. Training Group, Inc.*, 94 C 5559, 1995 WL 51405, at *3 (N.D. Ill. Jan. 20, 1995). "Motions to strike 'are not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.' " *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991) (quoting *Glenside W. Corp. v. Exxon Co.*, 761 F. Supp. 1100, 1115 (D.N.J. 1991)). "But where . . . motions to strike remove unnecessary clutter from the case, they serve to expedite, not delay." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989).

In our November 2014 ruling, we determined that Holmes' claims, which were based on incidents occurring between 2002 and 2007, were time-barred.  *Holmes*, 2014 WL 6564949, at *5.  Accordingly, the paragraphs in Holmes' amended complaint which delineated the conduct occurring from 2002 to 2007 were stricken and any references to those incidents were also stricken.  Currently, Holmes' SAC is replete with references to the conduct which was deemed to be time-barred.  Holmes' SAC references the previously stricken incidents in paragraphs 10, 11, 12, 14, 20, 21, 22, 23 and 28.  Specifically, Holmes alleges:

> " . . . I did not feel comfortable with it **remembering my past experiences with Mr. Morris**;" (paragraph 10)

> "I cringe . . . **The memory of the humiliation and guilt and shame seems to overwhelm me** and I feel totally depressed and low.  I see his office **as it was**

**back then** . . . In the last seven years I have been in his office approximately (4) times;" (paragraph 11 )

"I felt as though, **it was going to start up again** and I was not about to **be his victim again**;" (paragraph 12)

"This really frightened me because this is what **he said so many times in the past**;" (paragraph 14 )

"I began to wonder if she may be **experiencing what I had been through**;" (paragraph 20)

"[B]ecause of what I had **begun to experience again** I got up the courage to confide;" (paragraph 21)

"I felt that **he was beginning all over again** . . . for the first time **since this happened to me seven years ago** I was able to tell someone about it;" (paragraph 22)

"The harassment that has **started up again** . . . I have also mentioned the **inappropriate statements that have started up again**;" (paragraph 23)

"I am **once again experiencing** shame, embarrassment, sleeplessness, guilt, headaches, nausea . . . **as if this nightmare is beginning all over again** . . ." (paragraph 28 )

Holmes impermissibly references the stricken allegations to support the claims in her SAC. Holmes' SAC utilizes the time-barred incidents to provide the basis for her apprehension and her feelings of hostility. Additionally, Holmes tethers the past events to her current allegations to highlight the continuing nature of the alleged harassment. As we previously determined, Holmes' time barred claims, which were stricken, are unrelated to her current claims. *Id.* The inclusion of the time-barred allegations are unduly prejudicial in the manner in which they are included to support

her current allegations.  The removal of Holmes' time-barred claims would confine the pertinent allegations in the SAC and de-clutter her SAC.  Therefore, the Defendants' motion to strike the time-barred allegations contained paragraphs 10, 11, 12, 14, 20, 21, 22, 23 and 28 of Holmes' SAC is granted.  For clarity, only the portions of Holmes' SAC which were previously bolded above are stricken.  The peripheral allegations contained in each paragraph which do not reference the previously stricken allegations may stand.

### II. Motion to Dismiss

Prior to delving into the merits of the Housing Authority, Morris and Simelton's motions to dismiss, it is important that we clarify the posture of the case in light of several filings which skew the procedural record.  After the Defendants filed their motions to dismiss in January 2014, Holmes filed a third amended complaint in conjunction with her response to the Defendants' pending motion to dismiss Holmes' SAC.  On March 31, 2015, during a hearing, the Court clarified that Holmes' third amended complaint was improperly filed without the leave of Court.  We determined that Holmes had sufficiently responded to the Defendants' motions to dismiss her SAC and found that the SAC was the operative complaint.  Therefore, the Defendants' pending motions to dismiss are ripe for determination.

## A. Count I- Title VII (Hostile Work Environment)

The Housing Authority moves to dismiss Holmes' Title VII claim alleging a hostile work environment due to sexual harassment. "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To prevail on such a claim, Holmes must demonstrate that: (1) the work environment was both subjectively and objectively offensive; (2) her gender was the cause of the harassment; (3) the conduct was severe or pervasive; and (4) there was a basis for employer liability. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014). The Housing Authority contends that Holmes has failed to submit any allegations which suggest that the comments made to her were severe or pervasive.

Holmes exclusively relies on the comments made by Morris between 2008 and 2013 to serve as the basis for her sexual harassment claim. Holmes' SAC contains seven comments made by Morris to Holmes. Morris' comments range from remarks about Holmes' beauty, to reminiscing amount their past friendship. Morris commonly refers to Holmes as "pretty baby" or "beautiful" and he often wants to know if they "can be friends." Although Morris' comments may be unprofessional or crass, Title VII is not a general code of civility, therefore teasing and the voicing of offhand comments are not sufficient to constitute a cause of action under Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Holmes' allegations concerning

Morris' comments do not support a claim for sexual harassment under Title VII because Holmes has failed to support her claim with allegations that the hostility she faced was severe or pervasive. Accordingly, the Court grants the Housing Authority's motion to dismiss Count I of Holmes' SAC.

### B. Count II- Title VII (Retaliatory Discharge)

Count II of Holmes' SAC alleges retaliatory discharge in violation of Title VII. Holmes alleges that after she filed her first EEOC complaint in April 2012 she was unlawfully terminated from the Housing Authority. To establish a Title VII retaliation claim, a plaintiff must establish that: (1) they engaged in a legally protected activity; (2) they suffered an adverse employment action; and (3) there is a causal connection between the two. *Coleman v. Honahoe*, 667 F.3d 835, 859 (7th Cir. 2010). The Housing Authority argues that the near nine month gap between Holmes' April 2012 EEOC filing and her January 2013 termination is too great of a temporal expanse to establish a causal connection.

Despite the Housing Authority's insistence that the time between Holmes' EEOC complaint and her termination was too long, there is "no bright-line timing rule" that can be used to decide if a retaliation claim is plausible. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). In *Carlson*, the Seventh Circuit examined the pleading requirements for a Title VII retaliation claim. The court highlighted the importance of evaluating the facts and circumstances of each case to

determine if the causal connection requirement is met. *Id*. at 829. Ultimately, the *Carlson* court determined that an ongoing pattern of retaliation could satisfy the casual connection requirement and bridge a prolonged timing gap between an individual engaging in a protected activity and an adverse employment action. *Id*.

In the case at bar, Holmes alleges that immediately after she submitted her first EEOC complaint in April 2012 she was "shunned" at work. The day after Holmes informed the Housing Authority about her EEOC complaint, Morris sent an email to the office informing the staff that he was being placed on administrative leave. Morris also hosted a meeting with several of his "friends" from the Housing Authority office and informed them of Holmes' EEOC charge against him. Holmes alleges that once Holmes' EEOC interactions were spread through the office people began to treat her differently. No one would speak to her in the same manner as before and people would give her "dirty looks." Holmes' work environment got so bad that she was forced to close her door so she would not be exposed to the negative office moral. Holmes was subjected to the Housing Authority's employees scorn until she was terminated from her position in January 2013. Holmes has sufficiently alleged an ongoing pattern of retaliation sufficient to allege a causal connection. The Housing Authority's motion to dismiss Count II is denied.

**C. Count III- § 1981 (Hostile Work Environment)**

In Count III of Holmes' SAC she appears to contend that she was subjected to a hostile work environment in violation of § 1981 under two bases: (i) a hostile work environment involving sexual harassment; and (ii) a race based hostile work environment. As we set forth above, to allege a hostile work environment claim, Holmes must plead each of the following: (1) the harassment was based on her sex and/or race; (2) the harassment was objectively and subjectively offensive; (3) the harassment was severe and pervasive; and (4) there is a basis for employer liability. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). The Court analyzes § 1981 discrimination claims in the same manner as claims brought pursuant to Title VII of the Civil Rights Act. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). As such, we cite to both § 1981 and Title VII cases.

**i. Sexual Harassment based Hostile Work Environment**

Holmes asserts that both Morris and Simelton subjected her to sexual harassment which resulted in a hostile work environment. "[A hostile work] environment must be 'one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.' " *Smith v. Northeastern Ill. Univ.*, 388 F.3d, 559, 567 (7th Cir. 2004) (citing *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). Morris and Simelton provide almost identical arguments

concerning Holmes' claims, and therefore, the Court jointly addresses their contentions.

Morris and Simelton posit that Holmes has failed to sufficiently plead that the alleged harassment was severe and pervasive. The Court agrees. Only a "hellish" workplace is actionable as a hostile work environment. *Rogers v. City of Chicago,* 320 F.3d 748, 752 (7th Cir. 2003). Holmes merely alleges that Morris: (i) loaned Holmes money at her request; (ii) told her that she was beautiful and she should be in Hollywood; (iii) called her "pretty baby" on several occasions; and (iv) referenced their friendship. These innocuous occurrences certainly do not rise to the level of severe harassment. Furthermore, Holmes only alleges that Simelton took Morris' position after Morris was placed on administrative leave. Holmes even suggests that Morris believed that Simelton was secretly behind the sexual harassment charges being filed against him. Holmes does not allege that Simelton participated in any improper harassment. Nothing in the record suggests that Morris or Simelton's actions rose to an actionable level of hostility. Isolated instances, unless extremely serious, do not suffice to constitute a hostile work environment and the added presence of condescension or speaking down to an employee does not give rise to actionable harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Moser v. Ind. Dep't of Corrections*, 406 F.3d 895, 902–03 (7th Cir. 2005)). Accordingly, the Court finds that Holmes has not pled that a hostile work environment existed based on sexual harassment.

### ii. Race based Hostile Work Environment

Holmes, an African American, contends that she was subject to a race based hostile work environment under § 1981. To support a hostile work environment claim based on race, the plaintiff need not show that the complained-of conduct was explicitly racial, but must show it had a racial character or purpose. *Vance v. Ball State University*, 646 F.3d 461, 470 (7th Cir. 2010). The Court will not find a hostile work environment for mere offensive conduct that is isolated, does not interfere with the plaintiff's work performance, and is not physically threatening or humiliating. *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 567 (7th Cir. 2000).

In scouring Holmes' SAC, the Court cannot find one reference to Holmes' race made by Morris, Simelton, or any other member of the Housing Authority staff. The record is completely devoid of any indication that Holmes was subject to a racially hostile work environment. In the absence of harassment being racial in character, Holmes has failed to plead that she was subject to severe or pervasive racial harassment. Accordingly, in the absence of a sufficiently pled race based or sexual harassment based hostile work environment, the Court dismisses Count III of Holmes' SAC.

## CONCLUSION

For the aforementioned reasons, the Court strikes the time-barred allegations in paragraphs 10, 11, 12, 14, 20, 21, 22, 23, 28 and dismisses Count I and Count III. The Court denies the Housing Authority's motion to dismiss Count II.


Date: 4/20/2015

Charles P. Kocoras
United States District Judge